UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| ADAM PEZEN, Individually and on Behalf of All Others Similarly Situated, | CASE NO. 1:15-CV-03484 |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| FACEBOOK, INC., | |
| Defendant. | |
| _____/ | |
| CARLO LICATA, Individually and on Behalf of All Others Similarly Situated, | CASE NO. 1:15-CV-04022 |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| FACEBOOK, INC., | |
| Defendant. | |
| _____/ | |
| NIMESH PATEL, Individually and on Behalf of All Others Similarly Situated, | CASE NO. 1:15-CV-04265 |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| FACEBOOK, INC., | |
| Defendant. | |
| _____/ | |

**PLAINTIFFS' JOINT MOTION FOR THE APPOINTMENT
OF INTERIM CO-LEAD CLASS COUNSEL AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

I.      PROCEDURAL HISTORY ................................................................................................1

II.     THE APPOINTMENT OF INTERIM CLASS COUNSEL ..................................................1

        A.      Proposed Interim Class Counsel Have Worked Diligently to Identify and
                Investigate All Potential Claims in the Action ........................................................3

        B.      Proposed Interim Class Counsel Have Extensive Applicable Experience ..............4

                1.      Edelson's Knowledge of Applicable Law and Experience Handling
                        Complex Litigation ......................................................................................4

                2.      Bernstein's Knowledge of Applicable Law and Experience
                        Handling Complex Litigation .......................................................................6

                3.      Geller's Knowledge of Applicable Law and Experience Handling
                        Complex Litigation ......................................................................................9

                4.      Proposed Interim Class Counsel Have Successfully Worked
                        Together in the Past ...................................................................................13

        C.      Proposed Interim Class Counsel Are Prepared to Commit Substantial
                Resources and Have a Proven Track Record of Advancing Complex Cases
                to Trial and Post-Judgment Appellate Proceeding.................................................13

III.    CONCLUSION ...............................................................................................................15

# **TABLE OF AUTHORITIES**

## **United States Supreme Court Cases:**

*Amgen v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ..................... 8-9

*Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011) ................................... 14

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    135 S. Ct. 1318 (2015) ........................................................................ 14

*Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) ................................................... 5

## **United States Circuit Court of Appeals Cases:**

*Glickenhaus & Co. v. Household Int'l*,
    No. 13-3532, 2015 WL 2408028 (7th Cir. 2015) ..................................... 10 n.10

*In re Pet Food Prods. Liability Litig.*, 345 F. App'x 857 (3d Cir. 2009) ..................... 12

*Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005) ........................... 11

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) ...................................... 5 n.3

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) ............................. 6 n.6

## **United States District Court Cases:**

*Cohen v. Donald J. Trump*, No. 13-cv-02519 (S.D. Cal.) ..................................... 11

*Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.) ...................................... 5 n.1

*Enron Corp. Sec. Litig.*, No. 01-cv-3624 (S.D. Tex.) ......................................... 10

*Gemelas v. Dannon Co., Inc.*, No. 08-cv-00236 (N.D. Ohio) ................................... 11

*Harris v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.) ......................................... 4

*In re Abrams v. Van Kampen Funds, Inc.*, No. 01-cv-7538 (N.D. Ill.) ......................... 13

*In re Air Cargo Shipping Serv. Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y.) ................ 7

*In re American International Group, Inc. Sec. Litig.*,
    No. 04-cv-08141 (S.D.N.Y.) ........................................................... 8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-cv-61542 (S.D. Fla.) .................. 9

*In re Countrywide Financial Corp. Sec. Litig.*,
No. 07-cv-05295 (C.D. Cal.) ........................................................................................8

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 529 F. Supp. 2d 644 (S.D. Tex. 2006)......10 n.9

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002)....................................................14

*In re Facebook, Inc., IPO Securities and Derivative Litigation*,
No. 12-md-02389 (S.D.N.Y.). ......................................................................................7

*In re Facebook Privacy Litig.*, No. 10-cv-2389 (N.D. Cal.)............................................................4

*In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-cv-03461 (S.D.N.Y.) ......................................8

*In re HealthSouth Sec. Litig.*, No. 03-cv-01500 (N.D. Ala.) .........................................................13

*In Re: Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.*,
No. 09-cv-7670 (N.D. Ill.) ...........................................................................................6

*In re Lenovo Adware Litig.*, MDL No. 2624 (N.D. Cal.) ...............................................................13

*In re LinkedIn User Privacy Litig.*, No. 12-cv-3088 (N.D. Cal.)................................................4, 5

*In re Massey Energy Co. Sec. Litig.*, No. 10-cv-00689 (S.D. W.Va.) ................................6, 12, 13

*In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, No. 07-ml-01897 (C.D. Cal.)....................12

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
No. 05-md-01720 (E.D.N.Y.) .....................................................................................10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, MDL No. 1061 (D.N.J.).........................12

*In re Real Estate Associates Limited Partnership Litig.*, No. 98-cv-7035 (C.D. Cal.)....................9

*In re Schering-Plough/ENHANCE Sec. Litig.*, No. 08-cv-0397 (D.N.J) ........................................8

*In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729 (E.D. Ill.) .............................................11

*In Re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-cv-1691 (D. Minn.) ....................................10

*In re WorldCom Sec. Litig.*, No. 03-cv-8269 (S.D.N.Y.) ..............................................................10

*Jaffe v. Household Int'l, Inc.*, No. 02-cv-5893 (N.D. Ill.) .......................................................10, 14

*Jones v. Pfizer, Inc.*, No. 10-cv-03864 (S.D.N.Y) .......................................................................12

*Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.)............................................10, 12

*Makaeff et al. v. Trump University LLC et al.*, No. 10-cv-0940 (S.D. Cal.)..................................11

*Middlesex County Ret. Sys. v. Monster Worldwide, Inc.*, No. 07-cv-2237 (S.D.N.Y.) ...................7

*Resnick v. AvMed, Inc.*, No. 11-cv-13694 (S.D. Fla.)..................................................................5 n.4

*Silverman v. Motorola Inc.*, No. 07-cv-04507 (N.D. Ill.) ...............................................................12

*Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284 (N.D. Ill. 2014) .....................................2

*Sony PlayStation Network Data Breach Litig.*, MDL No. 2258 (S.D. Cal.) ..................................11

*Target Data Breach Litig.*, MDL No. 2522 (D. Minn.)...................................................................11

*Varacallo v. Mass. Life Ins. Co.*, No. 04-cv-2702 (D.N.J.) ...........................................................12

*Walker v. Discover Fin. Servs.*,
        No. 10-cv-6994, 2011 WL 2160889 (N.D. Ill. May 26, 2011)...........................................2

**State Courts:**

*In re Kinder Morgan, Inc. S'holders Litig.*, No. 06-C-801 (Kan. Dist. Ct., Shawnee Cnty.)........10

*Merkle v. Health Options, Inc.*, 940 So. 2d 1190 (Fla. 4th DCA 2006) .........................................12

**Statutes and Rules:**

740 ILCS 14/1 ...................................................................................................................................3

Fed. R. Civ. P. 23 ..................................................................................................................... *passim*

**Miscellaneous:**

Andrew Scurria, *comScore Pays $14M to Escape Massive Privacy Class Action*,
        Law 360 (June 4, 2014), http://www.law360.com/articles/544569/comscore-pays-14m-
        to-escape-massive-privacy-class-action.........................................................................5 n.2

Conor Dougherty, *Tech's Least Friended Man*, N.Y. Times (Apr. 4, 2015),
        http://www.nytimes.com/2015/04/05/technology/unpopular-in-silicon-valley.html ..........3

Manual for Complex Litigation (Fourth) (2004) ..............................................................................2

Stephen E. Embry, *Robins v. Spokeo Inc: the Light at the End of the Tunnel for Rule 23 Privacy Class Actions ... or the Headlights of an Oncoming Train*, Class Counsel Blog (Feb. 20, 2015), http://www.classcounselblog.com/Rule-23-class-action-standing -privacy ....................................................................................................................5 n.5

Plaintiffs in the related actions captioned *Pezen v. Facebook, Inc.*, No. 15-cv-03484 (N.D. Ill.) (the "*Pezen* Action"); *Licata v. Facebook, Inc.*, No. 15-cv-04022 (N.D. Ill.) (the "*Licata* Action"); and *Patel v. Facebook, Inc.*, No. 15-cv-04265 (N.D. Ill.) (the "*Patel* Action") (collectively, "the Actions"), hereby respectfully submit this Joint Motion and Memorandum of Points and Authorities Seeking an Order Appointing Jay Edelson ("Edelson") of Edelson PC, Joel Bernstein ("Bernstein") of Labaton Sucharow LLP ("Labaton") and Paul J. Geller ("Geller") of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Interim Class Counsel pursuant to Federal Rule of Civil Procedure 23(g). This memorandum of law is further supported by the Declaration of Jay Edelson, in Support of Plaintiffs' Joint Motion for the Appointment of Interim Co-Lead Class Counsel and the following Memorandum of Law in Support Thereof.

## I. PROCEDURAL HISTORY

On April 1, 2015, the *Licata* Action was filed in the Circuit Court of Cook County, Illinois County Department, Claims Division. On April 21, 2015, the *Pezen* Action was filed in the United States District Court for the Northern District of Illinois, Case No. 15-cv-03484. On May 6, 2015, defendant Facebook removed the *Licata* Action to the United States District Court for the Northern District of Illinois, Case No. 15-cv-04022. On May 14, 2015, the *Patel* Action was filed in the United States District Court for the Northern District of Illinois, Case No. 15-cv-04265. This Court then related the Actions a week later, on May 21, 2015, (*Pezen* Dkt. No. 22), and on June 3, 2015, the parties filed a stipulation and proposed order consolidating the Actions. (*Pezen* Dkt. No. 23.)

## II. THE APPOINTMENT OF INTERIM CLASS COUNSEL

To facilitate the efficient and orderly management of the Actions, Plaintiffs jointly seek the appointment of Edelson, Bernstein, and Geller ("Proposed Interim Class Counsel") as Interim Class Counsel, pursuant to Fed. R. Civ. P. Rule 23(g).

1

Rule 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." *See Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 WL 2160889, at **7–8 (N.D. Ill. May 26, 2011) (internal quotes omitted). Particularly where, as here, multiple related cases are pending, "the selection and activity of class counsel are often critically important to the successful handling of a class action." Fed. R. Civ. P. 23(g) (Notes of the Advisory Committee); *see also* Manual for Complex Litigation (Fourth) §21.271 (2004). The Manual for Complex Litigation advises that:

> If . . . there are a number of overlapping, duplicative, or competing suits . . . and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification and negotiating settlement.

*Id.* §21.11. "Early organization of the counsel who have filed the various cases transferred or consolidated for pretrial purposes is a critical case-management task." *Id.* §22.62.

In selecting interim class counsel, courts apply the standard articulated in Rule 23(g)(2), which requires the appointment of counsel "'best able to represent the interests of the class.'" *See Walker*, 2011 WL 2160889, at **8–9 (quoting Fed. R. Civ. P. 23(g)(2)). Under this standard, Courts consider:

- the work done by counsel in identifying or investigating the potential claims;

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014).

2

As set forth below, Proposed Interim Class Counsel are well-qualified and their appointment will best serve the interests of the putative Class. Fed. R. Civ. P. 23(g)(2).

**A.** **Proposed Interim Class Counsel Have Worked Diligently to Identify and Investigate All Potential Claims in the Action**

Proposed Interim Class Counsel and their firms have invested significant time and resources in identifying and investigating claims relating to Facebook's collection, storage, and use of biometric identifiers and information in violation of the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Each has researched the claims alleged, the history of BIPA, the policy considerations and risks outlined by the State of Illinois and the United States Congress regarding the collection of biometric identifiers and information, and the proliferation of identity-tagging databases. Each has researched the reported risks of identity theft associated with the mass collection of biometrics, for which, as recognized by the Illinois Legislature, "once compromised, the individual has no recourse." BIPA at §5(c). By way of example, Edelson PC's in-house investigative team of computer forensic experts and attorneys conducted a nine-month investigation into Facebook's deep face recognition technology, capturing network traffic from a test computer showing details of Facebook's use of facial recognition software, and analyzing Facebook's implementation of, and changes to, its "tag suggest" feature over time. (*See* Declaration of Jay Edelson ¶ 6 ("Edelson Decl."), attached hereto as Exhibit 1.)

Moreover, Proposed Interim Class Counsel were the first to file suits under BIPA, and those suits brought national attention to the important privacy concerns raised by Facebook's conduct. *See* Conor Dougherty, *Tech's Least Friended Man*, N.Y. Times, at BU1 (Apr. 4, 2015), *available at* http://www.nytimes.com/2015/04/05/technology/unpopular-in-silicon-valley.html.

In addition to substantial pre-filing research, Proposed Interim Class Counsel have already combined resources to streamline the litigation, conferring on strategy, delegating duties,

coordinating with defendants on the efficiencies of consolidation, and scheduling the filing of a consolidated complaint and briefing on defendants' anticipated responsive pleadings. (*See* Stipulation and Proposed Order Consolidating Cases, *Pezen* Dkt. No. 23.) Proposed Interim Class Counsel have also identified experts in the fields of biometric data collection and facial recognition technology. These ongoing efforts demonstrate the leadership and commitment necessary to secure the maximum recovery and protections for the Class.

**B.      Proposed Interim Class Counsel Have Extensive Applicable Experience**

**1.      Edelson's Knowledge of Applicable Law and Experience Handling Complex Litigation**

Recognized as a leader in plaintiffs' class and mass actions, Jay Edelson and the attorneys at his firm are routinely appointed as class counsel in high-profile privacy and technology class actions. *See*, *e.g.*, *In Re LinkedIn User Privacy Litig.*, No. 12-cv-3088, Dkt. 40 at 3 (N.D. Cal. Aug. 29, 2012) (appointing Edelson as interim lead counsel of four consolidated data breach cases, and holding that his firm is "experienced in class action litigation and, in particular, in class action litigation involving technology and privacy."); *see also In re Facebook Privacy Litig.*, No. 10-cv-2389, Dkt. 69, at 5 (N.D. Cal. Dec. 10, 2010) (appointing attorneys at Edelson's firm interim co-lead class counsel of nine consolidated class actions, citing the firm's "extensive experience in privacy litigation and commitment to the present action."). Indeed, Edelson was class counsel in the largest adversarially certified privacy class action to date, which resulted in a $14 million, non-reversionary class settlement that paid nearly $600 to each claiming class member. *See Harris v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.). Thus, through their wealth of experience, Edelson and the attorneys at his firm have established themselves as a leading firm in applying existing privacy statutes to emerging technologies. (*See* Firm Resume of Edelson PC, attached as Exhibit A to the Edelson Decl.) *See also* Dougherty, s*upra* ("[Edelson's]

cases read like a time capsule of the last decade, charting how computers have been steadfastly logging data about our searches, our friends, [and] our bodies.").

This expertise has led to a series of favorable decisions and settlements in the privacy and technology class action field, and elsewhere:

- Lead counsel on class action alleging that data-analytics company obtained and sold customer data without consent.[1] After certifying class and completing merits discovery, case settled for $14 million, providing claiming class members with nearly $600 payout;[2]

- After winning a seminal decision in the 11th Circuit,[3] reached two of the first data breach class action settlements that provided class members with cash without requiring a showing of identity theft or other post-breach injury;[4]

- Lead counsel in *Spokeo Inc. v. Robins*, currently before the United States Supreme Court. Commentators have called the case "the most important privacy class action and consumer case of the decade";[5]

- Lead counsel in group of nationwide class action settlements totaling hundreds of millions of dollars, involving claims of unauthorized cellular telephone charges;

- Lead counsel in numerous text message spam class actions, including the seminal Ninth Circuit decision holding that TCPA's prohibitions applied to text messaging, as well as a $35 million settlement involving Jiffy Lube, a $20 million settlement with a for-profit college, and a $16 million settlement with 20th Century Fox, among others;

---

[1]   *See Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.).

[2]   *See, e.g.*, Andrew Scurria, *comScore Pays $14M to Escape Massive Privacy Class Action*, Law 360 (June 4, 2014), http://www.law360.com/articles/544569/comscore-pays-14m-to-escape-massive-privacy-class-action.

[3]   *See Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012).

[4]   *See Resnick v. AvMed, Inc.*, No. 11-cv-13694 (S.D. Fla.); *In re LinkedIn User Privacy Litig.*, No. 12-cv-3088 (N.D. Cal.).

[5]   *See* Stephen E. Embry, *Robins v. Spokeo Inc: the Light at the End of the Tunnel for Rule 23 Privacy Class Actions...or the Headlights of an Oncoming Train*, Class Counsel Blog (Feb. 20, 2015), http://www.classcounselblog.com/Rule-23-class-action-standing-privacy.

- Lead counsel in several class actions against the major banks for suspending home credit lines in the wake of the financial crash. Settlements collectively restored billions of dollars in credit lines;

- Lead counsel in *Wigod v. Wells Fargo*, the first case in the country to allow consumers standing to sue over claims for failure to honor home loan modification agreements. After one Circuit Judge noted that "prompt resolution" of the case was necessary "for the good of the country,"[6] the case settled, resulting in loan forgiveness and substantial cash payments.

(*See also* Edelson PC Firm Resume.) *See also In Re: Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litig.*, No. 09-cv-7670, Dkt. No. 127 at 17 (N.D. Ill. Apr. 4, 2012) (describing Edelson's representation as "consistent with the highest standards of the profession" and "a model of what the profession should be and what the profession should do on behalf of people who have claims of this nature so as to have them resolved in a just, fair, and reasonable way.").

### 2. Bernstein's Knowledge of Applicable Law and Experience Handling Complex Litigation

With nearly four decades of experience in complex litigation, Bernstein's practice focuses on the protection of investors who have been victimized by securities fraud and breach of fiduciary duty, as well as consumer protection. He currently serves as lead counsel in a number of high-profile class actions, and recently led the team (along with Geller) that secured a $265 million all-cash settlement for a class of investors in *In re Massey Energy Co. Sec. Litig*. No. 10-cv-00689 (S.D. W.Va.). Bernstein has been recommend by *The Legal 500* in the field of Securities Litigation for his headline securities class action representation of institutional investors.

Bernstein's firm – Labaton – has been recognized as a leader in the field of complex litigation, and is one of the nation's foremost plaintiffs' class action law firms, having received

---

[6]  *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring).

awards and recognitions from leading industry publications, including *Chambers & Partners USA, The Legal 500 U.S., and Benchmark Litigation*. (*See* Firm Resume of Labaton Sucharow a true and accurate copy of which is attached as Exhibit B to the Edelson Declaration.) After nine years on the *National Law Journal*'s Plaintiffs' Hot List, the Firm was named a Hall of Fame Honoree, and was recently recognized on the *National Law Journal*'s list of Top 50 Elite Trial Firms in the United States. (*See id.*) The Firm has also been featured as one of *Law360*'s Most Feared Plaintiffs Firms and Class Action Practice Groups of the Year. (*See id.*) Labaton has achieved this distinction based on vigorous efforts representing a wide variety of plaintiffs in complex litigation on both a class and single-plaintiff basis, from individual consumers and small business, to large institutional investors (such as banks, mutual funds, insurance companies, pension funds and health and welfare funds), municipalities, and corporations.

Bernstein and the Labaton firm have cultivated a reputation as one of the finest litigation boutiques in the country, specializing in prosecuting securities, consumer, antitrust, and shareholder rights litigation throughout the United States. Labaton's tenacity and accomplishments before the federal bench have earned it a reputation for excellence. *Middlesex County Ret. Sys. v. Monster Worldwide, Inc.*, No. 07-cv-2237 (S.D.N.Y.)*; see also In re Air Cargo Shipping Serv. Antitrust Litig.*, No. 06-md-1775, 2011 WL 2909162, at **6–7 (E.D.N.Y. July 15, 2011) (noting Labaton Sucharow's "tireless work" in an "irrefutably complex" case).

Recent notable lead and co-lead counsel appointments include:

- ***In re Facebook, Inc., IPO Securities and Derivative Litigation.*** Labaton currently serves as co-lead counsel for lead plaintiffs in a securities class action against Facebook relating to the company's IPO – one of the largest initial public offerings for a technology company. *In re Facebook, Inc., IPO Securities and Derivative Litigation*, No. 12-md-02389 (S.D.N.Y.).

- ***In re Goldman Sachs Group Inc. Securities Litigation.*** Labaton serves as co-lead counsel (with Robbins Geller) in this high-profile litigation based on the

scandals involving Goldman Sachs's sale of the Abacus CDO. *In re Goldman Sachs Group Inc. Sec. Litig.*, No. 10-cv-03461 (S.D.N.Y.).

Other significant representations and notable successes include:

- ***In re American International Group, Inc. Securities Litigation.*** In one of the most complex and challenging securities cases in history, Labaton, as sole Lead Counsel secured more than $1 billion in recoveries on behalf of lead plaintiff Ohio Public Employees' Retirement System in a case arising from allegations of bid rigging and accounting fraud. To achieve this remarkable recovery, the Firm took over 100 depositions and briefed 22 motions to dismiss. The settlement entailed a $725 million settlement with American International Group (AIG), $97.5 million settlement with AIG's auditors, $115 million settlement with former AIG officers and related defendants, and an additional $72 million settlement with General Reinsurance Corporation, which was approved by the Second Circuit on September 11, 2013. *In re American International Group, Inc. Sec. Litig.*, No. 04-cv-08141 (S.D.N.Y.).

- ***In re Countrywide Financial Corp. Securities Litigation.*** Joel Bernstein led Labaton's team, as sole lead counsel for the New York State Common Retirement Fund and the five New York City public pension funds, sued one of the nation's largest issuers of mortgage loans on behalf of a class of shareholders for fraudulent misrepresentations relating to its mortgage underwriting practices. The Firm's focused investigation and discovery efforts uncovered incriminating evidence that, coupled with its convincing briefing and skilled negotiation, led to a $624 million settlement for investors. On February 25, 2011, the court granted final approval to the settlement, which is one of the top 20 securities class action settlements in the history of the PSLRA. *In re Countrywide Financial Corp. Sec. Litig.*, No. 07-cv-05295 (C.D. Cal.).

- ***In re Schering-Plough/ENHANCE Securities Litigation.*** As co-lead counsel, Labaton obtained a $473 million settlement on behalf of co-lead plaintiff. After five years of litigation, and three weeks before trial, the settlement was approved on October 1, 2013. The recovery is the largest securities fraud class action settlement against a pharmaceutical company. The Special Masters' Report noted, "the outstanding results achieved for the class is the direct product of outstanding skill and perseverance by Co-Lead Counsel . . . no one else . . . could have produced the results here—no government agency or corporate litigant to lead the charge and the Settlement Fund is the product solely of the efforts of Plaintiffs' Counsel." *In re Schering-Plough/ENHANCE Sec. Litig.*, No. 08-cv-0397, Dkt. 435 (D.N.J Aug. 28, 2013).

The Labaton firm has similarly demonstrated its willingness and ability to litigate complex cases through trial and appeal, to the U.S. Supreme Court if necessary, a skill unmatched by many firms in the plaintiffs' class action bar. In *Amgen v. Connecticut Retirement*

*Plans & Trust Funds*, 133 S. Ct. 1184 (Feb. 27, 2013), Labaton, as sole Lead Counsel, persuaded the Supreme Court to reject efforts to thwart the certification of a class of investors seeking monetary damages in a securities class action. Labaton has also tried a number of securities cases since the passage of the PSLRA, including *In re BankAtlantic Bancorp, Inc. Securities Litigation* (No. 07-cv-61542 (S.D. Fla.)), as well as *In re Real Estate Associates Limited Partnership Litigation* (No. 98-cv-7035 (C.D. Cal.)), in which the firm obtained a landmark $184 million jury verdict – recovering 100% of the alleged damages on behalf of 18,000 investors.

### 3. Geller's Knowledge of Applicable Law and Experience Handling Complex Litigation

The final proposed Interim Class Counsel, Geller, is a Founding Partner of Robbins Geller and a member of the firm's Management and Executive Committees.[7] Widely recognized as one of the most successful class action firms in the world, Robbins Geller has 200 attorneys in ten offices, including Chicago.[8] The Firm is unsurpassed in experience and success in leading class actions, having recovered more than $45 billion collectively for millions of consumers and investors.

Robbins Geller is routinely named among the leading class action firms by virtually every study published by unaffiliated third parties. In May 2015, *Chambers USA* gave Robbins Geller its highest ranking, praising it as the "preeminent plaintiff firm." Similarly, in comparing the value of recoveries by all plaintiffs' firms for 2014, Institutional Shareholder Services' recent "Top 50 Report" named Robbins Geller as its highest ranked firm, noting that it recovered over

---

[7] Geller was twice named by the *National Law Journal* as one of the nation's top "40 Under 40" (2002, 2005) and is regularly included in the regional and national listings of top rated attorneys (including *Lawdragon* (2006 – Present), *Super Lawyers* (2007 – Present), and *American Law Media* (awarded Florida's Most Effective Lawyer in 2006), among others).

[8] Robbins Geller's Chicago office is managed by James E. Barz, a former Federal Prosecutor in the Northern District of Illinois.

$300 million more than the second place firm. (*See* Firm Resume of Robbins Geller Rudman & Dowd, a true and accurate copy of which is attached to the Edelson Declaration as Exhibit C.) Robbins Geller attorneys secured the ***largest*** ever recovery in a securities class action in *Enron Corp. Sec. Litig.*, No. 01-cv-3624 (S.D. Tex.) ($7.3 billion);[9] the ***largest*** ever post-verdict judgment in *Jaffe v. Household Int'l, Inc.*, No. 02-cv-5893 (N.D. Ill.) ($2.46 billion);[10] the ***largest*** ever antitrust settlement in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-01720 (E.D.N.Y.) ($5.7 billion; final approval granted; appeal by objectors pending); the ***largest*** ever options backdating recovery in *In Re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-cv-1691 (D. Minn.) ($925 million); the ***largest*** ever opt-out (aggregated individual) recovery in *In re WorldCom Sec. Litig.*, No. 03-cv-8269 (S.D.N.Y.) ($657 million); the ***largest*** ever RMBS purchaser class action recovery in *Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.) ($500 million); and the ***largest*** ever corporate takeover litigation recovery in *In re Kinder Morgan, Inc. S'holders Litig.*, No. 06-C-801 (Kan. Dist. Ct., Shawnee Cnty.) ($200 million).

Geller's experience in particular is noteworthy. Before devoting his practice to the representation of plaintiffs, Geller represented blue chip companies in the defense of high stakes class actions, giving him an invaluable perspective. Among other cases, Geller was involved in

---

[9]    Notably, the *Enron* court wrote the following about Robbins Geller:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

[10]   On May 21, 2015, the United States Court of Appeals for the Seventh Circuit remanded on very narrow issues. *Glickenhaus & Co. v. Household Int'l*, No. 13-3532, 2015 WL 2408028 (7th Cir. 2015).

the defense of consolidated litigation involving A.H. Robins and the Dalkon Shield IUD, as well as various companies in nationwide anti-coagulant product liability class and mass tort actions. In representing aggrieved consumers and shareholders, Geller and his firm have been appointed to lead numerous cutting-edge consumer and privacy and fraud class actions, including:

- **Sony Data Breach.** In the *Sony PlayStation Network Data Breach Litigation*, MDL No. 2258 (S.D. Cal.), which spawned 65 separate actions eventually consolidated in the Southern District of California, Geller was appointed to serve as one of the Co-Lead Counsel and secured a recovery for the class valued at over $15 million. The settlement, granted final approval last month over no objections, was reached only after Plaintiffs defeated Sony's challenge to their standing - - a landmark victory that has served as a blueprint for subsequent data breach cases, including *Target Data Breach*, MDL No. 2522 (D. Minn.), where Robbins Geller assisted Lead Counsel in defeating Target's motion to dismiss and settling the case.

- **Drivers' Privacy Protection Act.** In this first of its kind consumer privacy case, Geller represented a class of drivers against a national bank that purchased private information in violation of a federal statute. After appeals to the Eleventh Circuit and the United States Supreme Court, Geller successfully negotiated a $50 million all cash settlement. *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005).

- **Dannon Activia® and DanActive®.** Robbins Geller attorneys, led by Geller, secured the largest ever settlement for a false advertising case involving a food product. Dannon agreed to modify its advertising and established a fund of up to $45 million to compensate consumers. *Gemelas v. Dannon Co., Inc.*, No. 08-cv-00236 (N.D. Ohio).

- **Trans Union Privacy Litigation.** Robbins Geller served as Class Counsel in MDL proceedings against one of the nation's largest credit reporting agencies under the Fair Credit Reporting Act and various state laws challenging the sale of personal consumer credit information. A class-wide settlement providing for a $75 million settlement fund and credit monitoring services was approved in September 2008. *In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729, MDL Dkt. No. 1350 (E.D. Ill.).

- **Trump University Consumer Fraud.** Robbins Geller currently serves as Lead Counsel in two related, certified RICO class actions alleging that consumers who were duped into purchasing seminars from "Trump University" received neither Trump nor a University. *Makaeff et al. v. Trump University LLC et al.*, No. 10-cv-0940 (S.D. Cal.); *Cohen v. Donald J. Trump*, No. 13-cv-02519 (S.D. Cal.).

11

- ***Vanishing Premium Cases.*** In *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, MDL No. 1061 (D.N.J.), one of the first cases of its kind, Robbins Geller attorneys, including Geller, obtained a settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme. In *Varacallo v. Mass. Life Ins. Co.*, No. 04-2702 (D.N.J.), Robbins Geller attorneys negotiated a settlement providing benefits to class members at an estimated value of nearly $700 million.

- ***Hazardous Toys.*** Robbins Geller attorneys, led by Geller, represented millions of consumers who purchased or received children's toys that contained dangerous levels of lead. A landmark $50 million settlement, as well as important quality assurance measures going forward, were secured for the class. *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, No. 07-ml-01897 (C.D. Cal.).

- ***HMO Emergency Services Compensation Litigation.*** Geller was at the forefront of cases concerning the amount and timing of payments made by HMOs to physicians, and his successful argument in Florida's Fourth District Court of Appeals led to the recognition of a viable cause of action that had never previously been recognized. *See Merkle v. Health Options, Inc.*, 940 So. 2d 1190 (Fla. 4th DCA 2006).

- ***Pet Food Products Liability Litigation.*** Robbins Geller served as Co-Lead Counsel in this products liability MDL in District of New Jersey concerning the death and injury to thousands of the nation's cats and dogs due to tainted pet food. The case settled for $24 million, and resulted in a seminal decision by the Third Circuit Court of Appeals in *In re Pet Food Prods. Liability Litig.*, 345 F. App'x 857 (3d Cir. 2009).

In addition to serving as lead and co-lead counsel in consumer privacy and fraud cases,

Geller and his Firm continue to secure more leadership roles in securities class actions than any

other firm.[11]

---

[11] *See, e.g.*, *In re Massey Energy Co. Sec. Litig.*, No. 10-cv-00689 (S.D. W.Va.) (Geller served as Co-Lead Counsel with Labaton's Bernstein; $265 million settlement approved in June 4, 2014); *Jones v. Pfizer, Inc.*, No. 10-cv-03864 (S.D.N.Y) (Robbins Geller was sole Lead Counsel in securing a $400 million settlement; pending final approval); *Silverman v. Motorola, Inc.*, No. 07-cv-04507 (N.D. Ill.) (Robbins Geller was sole Lead Counsel and achieved a $200 million settlement – the third largest in Seventh Circuit); *Luther v. Countrywide Fin. Corp.*, No. 12-cv-05125 (C.D. Cal.) (as Co-Lead Counsel, Robbins Geller achieved a $500 million settlement).

### 4. Proposed Interim Class Counsel Have Successfully Worked Together in the Past

In addition to their experience in litigating class actions involving privacy and other complex issues, Proposed Interim Class Counsel also have a proven record of working cooperatively and efficiently with each other. *See, e.g.*, *In re Abrams v. Van Kampen Funds, Inc.*, No. 01-cv-7538 (N.D. Ill.) (Geller and Bernstein Co-Lead Counsel; $31.5 million settlement); *In re HealthSouth Securities Litigation*, No. 03-cv-01500 (N.D. Ala.) (Robbins Geller and Labaton as Co-Lead; $671 million settlement), *In re Massey Energy Co. Sec. Litig.*, No. 10-cv-00689 (S.D. W.Va.) (Geller and Bernstein Co-Lead; $265 million settlement); and *In re Lenovo Adware Litig.*, MDL No. 2624 (N.D. Cal.) (Edelson PC and Robbins Geller are together representing plaintiffs in litigation over the secret installation of software that harvests user information for targeted advertisements).

### C. Proposed Interim Class Counsel Are Prepared to Commit Substantial Resources and Have a Proven Track Record of Advancing Complex Cases to Trial and Post-Judgment Appellate Proceeding

Proposed Interim Class Counsel have already devoted significant human and financial resources to representing the interests of the Class and will commit all further resources necessary to litigate this case through trial and appeals.

For example, the Edelson firm employs not only a team of lawyers, but also in-house computer forensic investigators, who will remain actively involved in the Actions. (*See* Edelson Decl. ¶ 7; Edelson PC Firm Resume.) These resources, along with the firm's substantial subject-matter expertise, have allowed the firm to undertake in-house, complex reviews of novel and proprietary technology in the past, including the investigation and analysis of highly confidential and complex source code. (*Id.*)

13

Moreover, Robbins Geller's in-house technological capabilities boast an unparalleled high-speed disk system capable of securely hosting more than 150 terabytes of data. The secure system is highly scalable and can host, onsite, a nearly limitless amount of data. The firm also uses the most advanced document review platforms. Combined with Robbins Geller's disk storage capabilities, the firm is able to host extremely large document productions and dramatically reduce the cost paid to outside vendors.

Robbins Geller's ability to endure and successfully resolve complex and cumbersome litigation in large, multimillion dollar cases such as this litigation is emblematic of its history and stature, as recognized by numerous federal and state courts. *See, e.g.*, *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 454 (S.D. Tex. 2002) (appointing Robbins Geller as sole lead counsel, finding it a "law firm with exceptional resources and capability to prosecute this action"). Additionally, in *Jaffe v. Household Int'l, Inc.*, No. 02-cv-05893, Robbins Geller's unmatched human and financial resources allowed it to achieve the largest jury verdict ever returned in favor of a shareholder class, following a six-week jury trial before the Honorable Ronald A. Guzman.[12]

In addition to its team of trial court litigators, Robbins Geller has an experienced and formidable appellate department which has obtained numerous significant appellate decisions, including a sweeping, unanimous victory before the Supreme Court in *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011), and a more recent Supreme Court victory in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015).

Labaton is likewise well-equipped to deliver results with a robust infrastructure, including more than 50 full-time attorneys, paralegals, financial analysts, e-discovery specialists, a certified public accountant, a certified fraud examiner, and a forensic accountant. With seven

---

[12]  *See* Note 10, *supra*.

investigators, including former members of federal and state law enforcement and managed by a law enforcement veteran who spent 12 years with the FBI, Labaton's internal investigative group provides the Firm with information that is often key to the success of its cases. Labaton has successfully litigated cases where a single defendant produced over 125 million documents, as well as a litigation where the Firm took or defended over 100 depositions.

To be sure, the importance of selecting experienced law firms to represent the Class in these Actions is even more significant considering the resources and representation of the litigant on the other side of the bar. Here, defendant Facebook is a well-capitalized corporate litigant, with vast resources and well-qualified counsel. To ensure the Class is capably represented against impressive defense counsel, the Court should appoint aggressive, well-funded and experienced advocates willing to litigate these cases effectively to their conclusion, up to and including trial and post-trial appeals, if necessary. Proposed Interim Class Counsel have a proven track record and possess the qualifications, resources, and ability to fulfill this important role.

## III. CONCLUSION

In sum, Edelson, Bernstein, Geller, and their respective law firms are well qualified to prosecute this litigation. They are committed to work cooperatively and efficiently, and to expend all the time and resources necessary to secure the very best outcome for Plaintiffs and the putative class. For these reasons, Plaintiffs respectfully request that the Court appoint them Interim Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

DATED: June 18, 2015      LABATON SUCHAROW
               JOEL H. BERNSTEIN
               CORBAN S. RHODES
               ROSS M. KAMHI


               */s/ Joel H. Bernstein*
               JOEL H. BERNSTEIN
               140 Broadway
               New York, NY 10005
               Telephone: 212-907-0700
               212-818-0477 (fax)
               jbernstein@labaton.com
               crhodes@labaton.com
               rkamhi@labaton.com

               LASKY & RIFKIND, LTD.
               Norman Rifkind
               Amelia Newton
               351 W. Hubbard St., Suite 401
               Chicago, IL 60654
               312.634.0057

               Attorneys for Plaintiff Adam Pezen


DATED: June 18, 2015      ROBBINS GELLER RUDMAN
                 & DOWD LLP
               JAMES E. BARZ (IL Bar # 6255605)
               FRANK RICHTER (IL Bar # 6310011)


               */s/ James E. Barz*
               JAMES E. BARZ
               200 South Wacker Drive, 31st Floor
               Chicago, IL 60606
               Telephone: 312/674-4674
               312/674-4676 (fax)
               jbarz@rgrdlaw.com
               frichter@rgrdlaw.com

16

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DAVID W. HALL
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
STUART A. DAVIDSON
MARK DEARMAN
CHRISTOPHER C. MARTINS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
TRAVIS E. DOWNS III
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff Nimesh Patel

DATED: June 18, 2015    EDELSON PC
             JAY EDELSON
             RAFEY S. BALABANIAN
             BENJAMIN H. RICHMAN


             */s/ Jay Edelson*
             JAY EDELSON

             350 North LaSalle Street, 13th Floor
             Chicago, Illinois 60654
             T: 312.589.6370
             F: 312.589.6378
             jedelson@edelson.com
             rbalabanian@edelson.com
             brichman@edelson.com

             Attorneys for Plaintiff Carlo Licata

### CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the below Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 18, 2015.

/s/ Joel H. Bernstein
Joel H. Bernstein

19

**<u>Service List</u>**

**MAYER BROWN LLP**
Vincent Connelly
vconnelly@mayerbrown.com
Michael D. Frisch
mfrisch@mayerbrown.com
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

Archis A. Parasharami
aparasharami@mayerbrown.com
1999 K Street, NW
Washington, DC 20006
(202) 263 3328

Lauren R. Goldman
lrgoldman@mayerbrown.com
1221 Avenue Of The Americas
New York, NY 10020
(212) 506-2647