**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____

ADAM PEZEN, individually and on   )
behalf of all others similarly situated,   )
               )
     Plaintiff,      )
               )
   vs.         )  Case No.:  15-cv-03484
               )
FACEBOOK, INC.,      )  Hon. James B. Zagel
               )
               )
     Defendant.    )

_____

CARLO LICATA, individually and on  )
behalf of all others similarly situated,   )
               )
     Plaintiff,      )
               )
   vs.         )  Case No.:  15-cv-04022
               )
FACEBOOK, INC.,      )  Hon. James B. Zagel
               )
               )
     Defendant.    )

_____

NIMESH PATEL, individually and on  )
behalf of all others similarly situated,   )
               )
     Plaintiff,      )
               )
   vs.         )  Case No.:  15-cv-04265
               )
FACEBOOK, INC.,      )  Hon. James B. Zagel
               )
               )
     Defendant.    )

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO TRANSFER VENUE**

Defendant Facebook, Inc. respectfully requests that the Court transfer these three cases to the Northern District of California pursuant to 28 U.S.C. § 1404(a). As a condition of creating a Facebook account, each plaintiff affirmatively agreed to Facebook's terms of service. These terms unambiguously require the plaintiffs to litigate all disputes related to Facebook in a federal or state court in California, where Facebook is based.

The Supreme Court recently held that "a forum-selection clause [must] be given controlling weight in all but the most exceptional cases." *Atlantic Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013) (internal quotation marks omitted). When a defendant seeks to enforce a valid forum-selection clause by moving to transfer under 28 U.S.C. § 1404(a), "a district court should transfer the case unless *extraordinary circumstances* unrelated to the convenience of the parties *clearly* disfavor a transfer." *Id.* at 575 (emphases added).

No such circumstances exist here. Quite the contrary: Facebook provides a free social-networking service to more than one billion people around the globe. Its forum-selection clause provides for both certainty and efficient resolution of disputes related to Facebook's service, which would otherwise have to be litigated around the country. It is therefore unsurprising that all four courts that have considered Facebook's forum-selection clause have enforced it and transferred the cases to the Northern District of California. This Court should do the same.

## BACKGROUND

Each of the plaintiffs in these actions currently has an active Facebook account. *See Pezen* Compl. ¶ 43; *Licata* Compl. ¶ 34; *Patel* Compl. ¶ 11. Mr. Pezen joined Facebook on August 22, 2005; Mr. Licata joined on November 13, 2009; and Mr. Patel joined no later than 2009. *See id.*; Decl. of Jeremy Jordan in Supp. of Def.'s Mot. to Transfer Venue ("Decl.") ¶ 3.

Facebook does not charge a fee to people who sign up for its social-networking service. Decl. ¶ 5. Each person who registers for and uses Facebook must agree to Facebook's terms of service, which are called the "Statement of Rights and Responsibilities" ("Statement"). *See* Ex. A. to Decl. ("This Statement of Rights and Responsibilities ('Statement,' 'Terms,' or 'SRR') is our terms of service that governs our relationship with users and others who interact with Facebook, as well as Facebook brands, products and services . . . ."). The Statement makes clear that adherence to its terms is a condition of using Facebook's service: "By using or accessing the Facebook Services, you agree to this Statement, as updated from time to time . . . ." *Id.* The Statement is hyperlinked on Facebook's homepage and on many other pages of the platform. Decl. ¶ 6.

Section 15 of the Statement, entitled "Disputes," requires people who use Facebook's service to litigate any disputes with Facebook in California:

> You will resolve any claim, cause of action or dispute (claim) you have with us arising out of or relating to this Statement or Facebook *exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County*, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating all such claims.

Ex. A to Decl. § 15.1 (emphasis added).

Facebook's terms of service have included a California forum-selection clause in materially identical form since at least 2005. *See* Decl. ¶ 9; Ex. A § 15.1; Ex. B at p.9; Ex. C § 14.1; Ex. D § 15.1; Ex. E § 15.1; Ex. F § 15.1; Ex. G § 15.1; Ex. H § 15.1; Ex. I at p.14 Ex. J at pp. 3-4.[1] Upon registering to use the service, each of the plaintiffs affirmatively agreed to this provision. Specifically, each of the plaintiffs was asked to click either a button that read "Sign

---

[1] At various times, Facebook's terms of service have been called "Terms of Use" or "Terms of Service" rather than the "Statement of Rights and Responsibilities." Decl. ¶ 7.

Up" or a button that read "Register Now," and was notified that clicking this button would indicate that he had read and agreed to Facebook's terms of service. Decl. ¶ 10. The applicable phrase—either "Terms of Service" or "Terms of Use"—was an underlined hyperlink that, if clicked, directed users to those terms, including the California forum-selection clause. *Id.*[2]

The plaintiffs nevertheless filed their lawsuits in Illinois: The *Pezen* and *Patel* complaints were filed in this Court on April 21 and May 14, 2015, respectively; the *Licata* complaint was filed in Illinois state court on April 1 and was timely removed to this Court by Facebook on May 6, 2015.

Each plaintiff alleges that a feature on Facebook violates the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Specifically, each plaintiff claims that Facebook (1) derives information about individuals' facial features from photographs that are uploaded to Facebook; and (2) subsequently uses that information to allow people who use Facebook to automate the process of identifying and "tagging" themselves or friends in photos uploaded to Facebook. *Pezen* Compl. ¶¶ 4, 15-18; *Licata* Compl. ¶¶ 21-33; *Patel* Compl. ¶¶ 22-26. Plaintiffs further allege that the information derived from the photographs constitutes "biometric information" within the meaning of BIPA, and that Facebook has violated the statute by failing to make the requisite disclosures to, and obtain adequate releases from, the people who use its service. *Pezen* Compl. ¶¶ 27-33; *Licata* Compl. ¶¶ 44-53; *Patel* Compl. ¶¶ 5-7; 26-29.

On June 3, the parties in all three actions filed a stipulation asking this Court to consolidate the three actions for the purpose of all pretrial proceedings. On June 18, plaintiffs

---

[2] Facebook has also provided notice of changes to people with Facebook accounts and informs them that "continued use" of the service constitutes "acceptance" of any new terms. Ex. A § 13.3; Decl. ¶ 11.

moved for the appointment of interim co-lead counsel. *See Pezen* Dkt. 26. They have not yet filed a consolidated complaint.

## ARGUMENT

Under 28 U.S.C. § 1404(a) and Supreme Court precedent, this Court is obliged to enforce a valid forum-selection clause when a defendant moves to transfer venue to a forum designated in that clause. Because Facebook's forum-selection clause is mandatory and enforceable against all three plaintiffs, the Court should transfer this case to the U.S. District Court for the Northern District of California. And it should do so before ruling on plaintiffs' motion for appointment of interim lead counsel.

## I. A VALID FORUM-SELECTION CLAUSE SHOULD BE ENFORCED WHEN A DEFENDANT MOVES TO TRANSFER VENUE.

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The requirements of Section 1404(a) are plainly satisfied here. The threshold question in deciding transfer of venue is whether the action could have been brought in the transferee forum. *IP Innovation LLC v. Lexmark Int'l, Inc.*, 289 F. Supp. 2d 952, 954 (N.D. Ill. 2003). This depends on whether venue is proper in that forum—a question that "is generally governed by 28 U.S.C. § 1391." *Atlantic Marine*, 134 S. Ct. at 577; *see also Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Under Section 1391, venue is proper in (among other places) "a judicial district in which any defendant resides." 28 U.S.C. § 1391(b)(1). Facebook's headquarters are in Menlo Park (Decl. ¶ 2), within the Northern District of California.

The Supreme Court's recent decision in *Atlantic Marine* substantially narrows the remainder of this Court's inquiry. "In the typical case *not* involving a forum-selection clause, a

district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public interest considerations," and then "weigh the relevant factors [to] decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atlantic Marine*, 134 S. Ct. at 581 (emphasis added) (quoting 28 U.S.C. § 1404(a)). But this analysis must give way when a forum-selection clause is involved, because "[t]he enforcement of valid forum-selection clauses . . . protects [the parties'] legitimate expectations and furthers vital interests of the justice system." *Id.* (internal quotation marks omitted). Accordingly, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 579 (internal quotation marks omitted).

*Atlantic Marine* explains that the analysis under Section 1404(a) must be "adjust[ed] . . . in three ways" when a forum-selection clause is involved. *Id.* at 581. "First, the plaintiff's choice of forum merits no weight"; "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests"; rather, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum," and "may consider arguments about public-interest factors only," which "will rarely defeat a transfer motion." *Id.* at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

Faced with the same forum-selection clause at issue here, a federal court in Florida recently concluded that *Atlantic Marine* required a transfer to the Northern District of California.

*Soffin v. Echannel Network, Inc.*, No. 12-cv-81279, 2014 WL 2938347, at *1-2 (S.D. Fla. June 30, 2014) (explaining that because there was "no disagreement . . . as to whether Facebook's Terms of Service and the included forum-selection clause are valid, . . . this case against Facebook should be transferred to the Northern District of California"). *Soffin* is hardly an outlier; since *Atlantic Marine*, courts in this Circuit have routinely granted motions to transfer venue pursuant to forum-selection clauses in other contracts. *See, e.g.*, *Cabada v. Sw. Airlines*, No. 14-cv-6759, 2015 WL 1931312, at *1 (N.D. Ill. Apr. 24, 2015); *Mroch v. Sedwick Claims Mgmt. Servs., Inc.*, No. 14-cv-4087, 2014 WL 7005003, at *4 (N.D. Ill. Dec. 10, 2014); *Prof'l LED Lighting, Ltd. v. Aadyn Tech., LLC*, No. 14-cv-2440, 2014 WL 6613012, at *7-11 (N.D. Ill. Nov. 21, 2014); *AOS LLC v. Hruby*, No. 14-cv-3109, 2014 WL 3725863, at *3 (C.D. Ill. July 28, 2014).

In short, if Facebook's forum-selection clause is enforceable, plaintiffs "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 134 S. Ct. at 583.[3] As discussed next, the clause is undoubtedly enforceable, and public-interest considerations overwhelmingly *favor* a transfer.

## II. FACEBOOK'S FORUM-SELECTION CLAUSE IS BOTH VALID AND ENFORCEABLE AGAINST EACH PLAINTIFF.

Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (internal quotation marks omitted). "The

---

[3] As discussed below, public-interest considerations are also part of this Circuit's test for determining *whether* a forum-selection clause is enforceable. Thus, there is some overlap between that test and the inquiry into whether an enforceable forum-selection clause should result in a transfer under § 1404 and *Atlantic Marine*. To avoid duplicative discussions, we leave this issue for the next section.

Supreme Court has construed this exception narrowly." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)); *see also Starykowicz v. Int'l Mgmt. Grp. (UK) Ltd.*, No. 13-cv-8195, 2014 WL 2514819, at *4 (N.D. Ill. June 4, 2014) (same); *Int'l Star Registry of Ill. v. Omnipoint Mktg., LLC*, No. 05-cv-6923, 2006 WL 2598056, at *3 (N.D. Ill. Sept. 6, 2006) ("The 'unreasonable under the circumstances' exception is construed narrowly . . . ."). A forum-selection clause may be considered "unreasonable" only in three exceptionally rare situations: (1) if it "was the result of fraud, undue influence or overweening bargaining power"; (2) "if the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court"; or (3) "if enforcement of the clause[] would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *Bonny*, 3 F.3d at 160 (internal quotation marks and alteration omitted); *see also Roberts & Schaefer Co. v. Merit Contracting*, 99 F.3d 248, 252 (7th Cir. 1996) ("[A] forum selection clause is enforceable except in exceptional circumstances.").

None of these exceptions applies here. Indeed, in each of the three federal cases where Facebook's forum-selection clause has been challenged, the courts rejected the challenge and enforced the clause. *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 903 (S.D. Ill. 2012); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012); *Miller v. Facebook, Inc.*, No. 09-cv-2810, 2010 WL 9525523, at *4 (N.D. Ga. Jan. 15, 2010).[4]

a. *No fraud or undue influence*. The "test for fraud or overreaching . . . considers the physical characteristics of the [forum-selection] clause and asks whether the plaintiff had 'the

---

[4] In the fourth case in which Facebook's forum-selection clause was enforced, the plaintiff did not challenge its validity. *See Soffin*, discussed at p. 6 *supra*.

*ability* to become *meaningfully informed* of the clause and to reject its terms.'" *Doe v. Cultural Care, Inc.*, No. 09-cv-6126, 2010 WL 3075711, at *4 (N.D. Ill. Aug. 3, 2010) (emphases added) (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)); *see also Mezyk v. U.S. Bank Pension Plan*, No. 09-cv-384, 2009 WL 3853878, at *3 (S.D. Ill. Nov. 18, 2009) (a forum-selection clause is unenforceable under the first *Bonny* exception "if it was not reasonably communicated to the party against whom enforcement is sought").  Although a clause may be unenforceable if it "is buried in illegible 'fine print,'" *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990), a clause that "can be comfortably read will be considered valid," *Doe*, 2010 WL 3075711, at *4; *see, e.g.*, *Carnival Cruise Lines*, 499 U.S. at 595 (holding that a forum-selection clause printed in the lower left-hand corner of a passenger ticket was enforceable); *Donovan*, 916 F.2d at 377 ("There was no burial in fine print here. The print is small, but it is not fine; it is large enough that even the pale copies in the appendix on appeal can be read comfortably by the author of this opinion, with his heavily corrected middle-aged eyesight."); *Bombshell Accessories, Inc. v. L.A. Silver, Inc.*, No. 10-cv-8042, 2011 WL 3610088, at *5 (N.D. Ill. Aug. 16, 2011) (forum-selection clause enforceable where "it was not written in such fine print or buried boilerplate as to escape Defendant's notice").

Plaintiffs are—and at all times were—more than "meaningfully inform[ed]" of Facebook's forum-selection clause.  Far from being "buried in illegible 'fine print,'" *Donovan*, 916 F.2d at 377, the clause is displayed in the Statement under a bold heading titled "Disputes." Ex. A § 15.  Moreover, at the time plaintiffs signed up for Facebook, they were required to attest that they had read and agreed to Facebook's terms of service by affirmatively clicking a "Sign Up" or "Register Now" button that was accompanied by a hyperlink to those terms.  Decl. ¶ 10. Numerous courts have found this structure enforceable. *See, e.g.*, *E.K.D.*, 885 F. Supp. 2d at 901

("Persons wishing to join facebook.com must attest that they have read Facebook's [terms of service]. . . . Accordingly, the Court concludes that Plaintiffs were reasonably put on notice of Facebook's [terms of service]."); *Fteja*, 841 F. Supp. 2d at 840 ("Fteja was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough.").[5]

    **b.** ***No grave inconvenience.*** The party challenging the enforceability of a forum-selection clause bears a "heavy burden" to "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18-19; *see also Bonny*, 3 F.3d at 160. Critically, "convenient is not synonymous with reasonable with respect to litigation fora in these types of circumstances"; "[w]here a forum selection clause is in play, a court does not balance

---

[5]    *See also*, *e.g.*, *Crawford v. Beachbody, LLC*, No. 14-cv-1583, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) ("Courts have held that a [forum-selection clause] constitutes a binding contract where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I Accept' button and clicks that button."); *In re Online Travel Co.*, No. 12-cv-3515, 2013 WL 2948086, at *2 (N.D. Tex. June 14, 2013) (users of Travelocity assented to agreement by clicking on a button that said "Agree and Complete Reservation" located "directly above a notice explaining that, by clicking the button, the user agrees to the policies set forth in the User Agreement, which was accessible via hyperlink"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (terms of service were enforceable where user "was provided with an opportunity to review the terms . . . in the form of a hyperlink immediately under the 'I accept' button"); *Snap-on Bus. Solutions Inc. v. O'Neil & Assocs., Inc.*, 708 F. Supp. 2d 669, 683 (N.D. Ohio 2010) (upholding terms for a "website [that] contain[ed] a single page access screen where users must input a user name and password and then click on an 'Enter' button to proceed," which was directly above a "green box with an arrow that users [could] click to view the" terms of service); *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009) (enforcing forum-selection clause where user provided identification information and clicked a button to submit his registration, and where "[n]ext to the button was a blue hyperlink to the website terms" and notice that "[b]y submitting you agree to the Terms of Use"); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) (upholding arbitration clause contained in terms accessible via hyperlink next to a button on the registration page, and concluding that "[a] reasonably prudent [user] would have noticed the link and reviewed the terms before clicking on the acknowledgment icon").

inconveniences to the respective parties." *Crestview Capital Master, LLP v. Martin*, No. 08-cv-3263, 2009 WL 1507659, at \*2 (N.D. Ill. May 29, 2009); *accord Atlantic Marine*, 134 S. Ct. at 582 ("a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," including the non-movant's convenience). Rather, when a party agrees to a forum-selection clause, it had the opportunity to "consider the potential inconvenience of litigating in the [selected forum], but decided to risk it." *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 426 (7th Cir. 2007). Except in extraordinary circumstances, the party must be held to that choice.

No such circumstances exist here. First, "[t]he forum selected for this dispute is not some arbitrary location to restrict the parties' access to ligation"; rather, it "is the jurisdiction where the contracting defendant is located." *Nat'l Dev. Corp. v. Fenetres MQ, Inc.*, No. 98-cv-618, 1998 WL 34313581, at \*3 (D.D.C. June 26, 1998). "It is neither unconscionable[] nor uncommon for a contracting party to bargain for the 'home field' as the sole forum for contractual disputes." *Id.* Thus, "[w]hatever inconvenience Plaintiffs would suffer by being forced to litigate in a court in California was foreseeable at the time that they agreed to the forum-selection clause"; "[t]he time for [p]laintiffs to have considered whether the forum-selection clause . . . would terribly disadvantage them was when they agreed to the [terms of service]." *E.K.D.*, 885 F. Supp. at 902 (internal quotation marks and alterations omitted).

Moreover, just as in *E.K.D.*, "[p]laintiffs' counsel . . . are sophisticated class-action attorneys who are accustomed to litigating throughout the United States." *Id.* They are well-known class action attorneys located in Illinois, Florida, New York—and California. *See* Stipulation and Proposed Order (*Pezen* Dkt. 23) (stipulation signed by Shawn Williams, Esq., principal attorney for Mr. Patel, who is based in San Francisco, as well as by counsel for Mr.

-10-

Licata and Mr. Pezen).  Indeed, plaintiffs' counsel themselves have touted their experience litigating class actions in California federal court.  *See* Pl. Mot. for Appointment of Interim Co-Lead Class Counsel (*Pezen* Dkt. 26) at 4 (stating that Jay Edelson, counsel based in Illinois, is "routinely appointed as class counsel in high-profile privacy and technology class actions" around the country, including in the Northern District of California); *id.* at 10-12 (discussing Mr. Geller's experience in cases filed across the country, from California to Florida); *see also id.* at 14 (discussing "Robbins Geller's unmatched human and financial resources").  Thus, litigating this case in California would not even be *any* less convenient for plaintiffs than it would be in this Court, let alone "*so* gravely difficult and inconvenient," *M/S Bremen*, 407 U.S. at 18 (emphasis added), that it would constructively deprive plaintiffs of their days in court.

      **c.**   ***No contrary public policy.***  Finally, neither the third *Bonny* exception (that "enforcement of the clause[] would contravene a strong public policy of the forum," 3 F.3d at 160) nor the *Atlantic Marine* exception (that "public-interest factors overwhelmingly disfavor a transfer," 134 S. Ct. at 583) is applicable here.  To the contrary, "[u]nder Illinois law, a forum selection clause is enforceable except in exceptional circumstances."  *Roberts & Schaefer*, 99 F.3d at 252 (citing *Calanca v. D & S Mfg. Co.*, 157 Ill. App. 3d 85 (1987)); *see also Compass Envtl., Inc. v. Polu Kai Servs, LLC*, 379 Ill. App. 3d 549, 554-55 (2008) ("A forum-selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances."); *E.K.D.*, 884 F. Supp. 2d at 902 ("The enforcement of forum-selection clauses offends no public policy of Illinois"); *cf. Fteja*, 841 F. Supp. 2d at 841, 844 (finding no "public policy ramifications" from a transfer from New York to California).  Because forum-selection clauses are strongly *favored* in Illinois, *declining* to transfer the case would be contrary to the State's public policy.  *See, e.g., Fenetres*,

1998 WL 34313581, at *3 ("[E]xcept for cases of extreme inconvenience and difficulty, the enforcement of [ ] forum selection clauses does not contravene, but actually *promotes*, the public policy of fostering [ ] judicial and economic efficiency, by allowing contracting parties to predict the forum for future disputes." (emphasis added)).

Public policy supports the enforcement of Facebook's forum-selection clause for an additional reason. Forum-selection clauses provide certainty for online services like Facebook that offer their platforms free of charge to hundreds of millions of people around the world. As one court recently explained in enforcing YouTube's forum-selection clause, "[b]ecause many millions of users from across the globe create accounts and upload videos on YouTube's website free of charge, the forum-and-venue selection clause is necessary to manage the costs of litigation and reduce the burden to YouTube personnel in litigating all over the world." *Song fi, Inc. v. Google Inc.*, No. 14-1283, 2014 WL 5472794, at *6 (D.D.C. Oct. 29, 2014). And as the court in *Miller* explained, "striking [Facebook's] forum selection clause could wreak havoc on the entire social-networking internet industry," because "the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies." 2010 WL 9525523, at *1.

In sum, the plaintiffs affirmatively agreed to a mandatory forum-selection clause requiring them to litigate any disputes against Facebook in California. "Having taken advantage of [the defendant's] free services, Plaintiffs cannot complain that the terms allowing them to do so are unenforceable." *Song fi*, 2014 WL 5472794, at *6.

### III.    THE COURT SHOULD RULE ON VENUE NOW.

We respectfully request that the Court resolve this motion to transfer now, rather than ruling on plaintiffs' motion for interim lead counsel status and then awaiting plaintiffs' consolidated complaint and Facebook's anticipated motion to dismiss. First, there is no question that the Court has the *power* to rule now: "Section 1404(a) motions can be brought at any time." *Marsh v. Sun Host, Inc.*, No. 87-cv-7843, 1989 WL 8619, at *1 (N.D. Ill. Feb. 1, 1989). The statute "sets no limit on the time when a motion to transfer may be made"; such "motions have been held proper . . . even before service of process." 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3844 (4th ed. 1986).[6] The Court possesses all of the information it needs to rule on this motion.

Second, it would be far more efficient for the Court to rule on transfer now as a threshold issue and, if transfer is granted, permit the transferee court to address subsequent issues in the case. As courts have repeatedly recognized, even if a court is presented with both a motion to transfer venue and a motion to dismiss (or some other substantive motion) simultaneously, the transfer motion should be considered first to prevent the risk that multiple district courts may have to consider the merits of a case. *See, e.g.*, *Pioneer Life Ins. Co. of Ill. v. Anderson*, No. 88-cv-20249, 1988 WL 143726, at *1 (N.D. Ill. Dec. 21, 1988) (considering a motion to transfer under § 1404(a) before a motion to dismiss "in the interest of efficiency"); *Hart v. Crab Addison, Inc.*, No. 13-cv-6458, 2014 WL 2865899, at *2 (W.D.N.Y. June 24, 2014) ("Where district

---

[6]      *See also, e.g.*, *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) ("An action may be transferred under § 1404(a) at any time during the pendency of the case . . . ."); *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137, 140 n.3 (D.D.C. 2007) ("[A] motion to transfer may be made at any time after the initiation of an action under section 1404(a)."); *Lencco Racing Co. v. Arctco, Inc.*, 953 F. Supp. 69, 70 n.1 (W.D.N.Y. 1997) ("A motion to transfer venue may be made at any time.").

courts are presented with both a motion to dismiss, under Fed. R. Civ. P. 12(b)(6), and a motion to transfer venue, under 28 U.S.C. § 1404(a), they commonly address the venue motion first, and, where transfer is appropriate, leave the motion to dismiss to be decided by the transferee court."); *Brown v. New York*, 947 F. Supp. 2d 317, 326 (E.D.N.Y. 2013) ("As the Court finds that transfer is appropriate, it defers decision on the Defendants' motion to dismiss for failure to state a claim to allow the transferee court an opportunity to consider the merits of the case."); *Lane v. Nash Finch Co.*, No 11-cv-241, 2011 WL 4459119, at *3 (D. Neb. Sept. 26, 2011) (a motion for transfer of venue under § 1404(a) based on a forum-selection clause "should be considered before the merits of the case"); *Blechman v. Ideal Health, Inc.*, 668 F. Supp. 2d 399, 403 (E.D.N.Y. 2009) ("Prior to reaching the merits of Defendants' motion to dismiss, the Court must address the threshold matter of whether this forum is the proper venue for hearing this dispute."); *Hafstad v. Hornick*, No. 86-cv-2811, 1987 WL 10871, at *3 (D.D.C. May 6, 1987) ("[I]t is fitting to leave all decisions on the merits to [the transferee] court, rather than to tie that court's hands with substantive decisions made in this jurisdiction.").

These efficiency considerations are particularly compelling because the Court has not yet ruled on the plaintiffs' motion for the appointment of interim lead counsel. According to the parties' stipulation, plaintiffs will have 30 days from that ruling to file their proposed consolidated complaint, after which Facebook will have 30 days to respond. *See* Stipulation and Proposed Order (*Pezen* Dkt. 23) ¶¶ 6-7. Judicial economy would best be served by resolving this motion to transfer before any additional litigation is conducted in this District.

## CONCLUSION

The Court should transfer these cases to the Northern District of California.

Date: July 1, 2015       By: /s/ *Lauren R. Goldman*

Lauren R. Goldman
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com

Vincent Connelly
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
mfrisch@mayerbrown.com
vconnelly@mayerbrown.com

Archis A. Parasharami
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3328
aparasharami@mayerbrown.com

John Nadolenco*
MAYER BROWN LLP
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com
*Motion for *pro hac vice* pending

*Counsel for Defendant Facebook, Inc.*